690 So.2d 952 (1997)
Dolly McGILL, Plaintiff-Appellee,
v.
COCHRAN SYSCO FOODS, a DIVISION OF SYSCO CORPORATION, and Jet Spray Corporation, Defendants-Appellants,
United States Fire Insurance Company, Third Party Defendant-Appellee.
No. 29154-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1997.
Writ Denied May 1, 1997.
Crawford & Anzelmo by Donald J. Anzelmo, Monroe, for defendants-appellants Sysco Corporation and Cochran-Sysco Foods.
*953 Davenport, Files & Kelly, L.L.P. by William G. Kelly, Jr., Monroe, for Jet Spray Corporation.
Lunn, Irion, Johnson, Salley & Carlisle by Frank M. Walker, Jr., Shreveport, for Fidelity & Casualty Co. of New York.
Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P. by Gus A. Fritchie, III, New Orleans, for third party defendant-appellee United States Fire Insurance Co.
C. Kevin Hayes and Rhett R. Ryland, Baton Rouge, for Dolly McGill.
Before GASKINS, CARAWAY and PEATROSS, JJ.
CARAWAY, Judge.
After being named defendants in a product liability suit, Cochran Sysco Corporation and its parent corporation Sysco Corporation (hereinafter collectively "Sysco"), filed a third party demand against U.S. Fire Insurance Company ("U.S. Fire") asserting that U.S. Fire provided insurance coverage to Sysco. U.S. Fire denied coverage and filed a motion for summary judgment which the trial court granted. Sysco appeals. For the reasons expressed below, we reverse the summary judgment and remand for further proceedings.

Factual and Procedural History
Sysco purchased an electric tea machine from Jet Spray Corporation ("Jet Spray"), the manufacturer, and installed it in the North Monroe Hospital cafeteria. Sysco sold tea to the hospital and provided the tea machine to the hospital in an effort to increase tea sales. Sysco retained ownership of the machine and was responsible for repairs. In September 1992, Dolly McGill, a hospital employee, received an electric shock while attempting a minor adjustment to the machine. Ms. McGill filed suit against Jet Spray and Sysco alleging product liability and negligence.
Sysco filed a cross claim against Jet Spray seeking indemnity under a "Hold Harmless Agreement". Under said agreement Jet Spray also agreed to purchase insurance naming Sysco as an additional insured with respect to comprehensive general and product liability. Sysco also filed a third party claim against U.S. Fire asserting coverage under a policy issued by U.S. Fire to Jet Spray. U.S. Fire denied coverage and filed a motion for summary judgment. Prior to trial, Dolly McGill settled her claims with all defendants. Sysco reserved its right to pursue the cross claim and the third party claim. Following argument, the trial court granted U.S. Fire's motion for summary judgment and dismissed the insurance company from the suit.

Summary Judgment Standard
Appellate courts review summary judgments de novo, using the same criteria applied by the trial court in determining whether summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). A motion for summary judgment shall be granted when the mover establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. The decision is made on the basis of the pleadings, affidavits and discovery documents in the record. La. C.C.P. art. 966 B. A material fact is one whose existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery, i.e., one that would matter on the trial of the merits. A genuine issue is a triable issue. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751; Whitney National Bank v. Rockwell, 94-3049 (La. 10/16/95), 661 So.2d 1325.
The interpretation of an insurance contract is usually a legal question which can be properly resolved by means of a motion for summary judgment. State Farm Mutual Auto Insurance Co. v. Casualty Reciprocal Exchange, 600 So.2d 106 (La.App.2d Cir. 1992). (Emphasis added). However, the summary judgment procedure is rarely appropriate in a negligence case where the decision turns on a determination of whether the defendant's conduct constituted a tort, since such a determination almost always involves a factual dispute. Whatley v. Caddo Parish Sheriff's Department, 27,321 (La. App.2d Cir. 9/27/95), 661 So.2d 557.

*954 Discussion

Although Sysco is not specifically named as an insured under Jet Spray's policy with U.S. Fire, it asserts coverage under the vendor's endorsement of the contract. U.S. Fire based its motion for summary judgment on its assertion that Sysco is not a vendor of the tea machine because Sysco did not sell the machine to the hospital but instead retained ownership and responsibility for all repairs.
The central question therefore is whether Sysco is a "vendor" within the meaning of the policy. The vendor's endorsement does not limit the number of vendors insured or list them by name. Neither does the policy exclude any Jet Spray products. The policy endorsement provides in pertinent part:
WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business subject to the following exclusions:
1. The insurance afforded the vendor does not apply to:
* * * * * *
e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of the products.
f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product.
The parties' intent, as reflected by the words of the policy, determines the extent of coverage. La.C.C. art. 2045. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La.C.C. art. 2047. If the language of the policy is clear, unambiguous and expressive of the parties' intent, it must be enforced as written and any ambiguity that persists after applying the usual rules of construction must be construed against the drafter and in favor of the insured. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Doubtful provisions in insurance policies should be interpreted to afford rather than deny coverage. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 630 So.2d 759 (La.1994). Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Ledbetter v. Concord General Corp., 95-0809 (La. 1/6/96), 665 So.2d 1166.
In Lambert v. Maryland Cas. Co., 418 So.2d 553 (La.1982), the court discussed contractual interpretation:
A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning and effect. When there is doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in the same context. Terms that present two meanings must be taken in the sense most congruous to the matter of the contract. Lambert, supra, at pp. 559-560 (citations omitted.)
The terms "vendor" and "distributed" are not defined in the policy. U.S. Fire now argues that restrictive definitions should apply to those terms. The definitions provided by U.S. Fire on appeal would require Sysco to have sold the tea machine in order to be covered under the vendor's endorsement. This narrow interpretation would make the verbs "distributed or sold" redundant when referring to coverage for liability from Jet Spray's products. Some effect is to be given *955 to every word or clause if possible for a court may not impute to the parties the use of language without meaning and effect. Lambert, supra.
Although the term "distribute" can connote a sale, it may also be read to indicate mere delivery of an item. Webster's New Universal Unabridged Dictionary 417 (1992). Indeed, U.S. Fire offers in support of its argument the definition of the term distributor from Black's Law Dictionary which makes reference to the possibility of a manufacturer's placement of goods on consignment with a distributor. A consignor delivers a product to the consignee who hopefully delivers a product to the ultimate consumer. Title to the product usually, in such instance, does not reside with the consignee and, upon the sale of the product, title passes from the consignor directly to the vendee. C.V. Hill & Co. v. Interstate Electric Co. of Shreveport, 196 So. 396 (La.App.2d Cir.1940). Like a consignee, Sysco's distribution of the product resulted in the delivery of possession to the ultimate consumer without Sysco's direct delivery of title to the tea machine.
In Cooper Laboratories v. International Surplus Lines, 802 F.2d 667 (La.App. 3d Cir.1986), the defendant physicians and hospital asserted coverage under a similar vendor's endorsement found in the drug manufacturer's insurance policy. The endorsement provided in pertinent part:
[T]he persons insured provision is amended to include any person or organization (herein referred to as `vendor') as an insured but only with respect to the distribution or sale in the course of the vendors' business of the name insured's products...
Because the physicians "had not purchased it [the drug] for resale, held it on consignment, or even had it in their possession before it was administered to the patient," the court held they were not vendors of the drug. The court then considered whether the physicians had distributed the drug. The court defined distribute as follows: "[T]o sell, offer for sale, or deliver an item or line of merchandise to individual customers, especially in a specified region or area." (Emphasis added.) Because prescribing drugs, an act which might lead to medical malpractice, does not encompass either the sale or delivery of the drug, the court held the physicians were not distributors under the terms of the policy. U.S. Fire asserts that this decision supports its position regarding the status of Sysco. We disagree. In fact, from our reading of the case, we believe that the court's view of the scope of the insurance coverage supports our understanding of the contract.
We first note the federal appellate court gave effect to the disjunctive phrase "or distribute." The court recognized that the verb "distribute" may connote mere delivery which may not amount to an actual sale. However, the physicians did not deliver the drug nor receive a direct economic benefit from the consumer's use of the product. It is undisputed that Sysco delivered the tea machine to the hospital and profited by such delivery through the overall utilization of its tea products by the hospital. Most significantly, the court in Cooper found that the hospital was protected under the "sold or distributed" language of the policy coverage because "[a] reading of both the policy and the full text of the endorsement reveals a design to provide vendors with coverage for claims against them as links in the chain of distribution from manufacturer to consumer."
Our decision today rests on the same rationale. Jet Spray secured insurance to protect against the risk that a defective product, manufactured and placed into the stream of commerce by Jet Spray, would injure the ultimate consumer employing the use of Jet Spray's product. Jet Spray sold the product in question to Sysco who distributed it for use by the hospital. It is of little or no import under the facts of this case and the wording of the insurance contract that Sysco did not deliver title to the tea machine to the hospital. The critical fact is that Sysco delivered the allegedly defective product to the hospital and could be an innocent link in the chain of distribution of a defective product. The injury to Ms. McGill and the subsequent lawsuit against Sysco and Jet Spray were the very risks that Jet Spray sought to avoid by purchasing insurance. A reading of the complete U.S. Fire insurance contract reveals *956 that the intent of the parties was to provide coverage to parties that innocently distribute a defective product.
Next, U.S. Fire asserts that Sysco's alleged negligence in installing and servicing the product prevents its recovery under the insurance contract, citing Easton v. Chevron Industries, Inc., 602 So.2d 1032 (La.App. 4th Cir.1992), a case where a full trial on the issue of such negligence was held. Whether exclusions "e" or "f" under the endorsement prevent Sysco's recovery present fact questions regarding the actions of Sysco and Ms. McGill. U.S. Fire's argument that negligence must be imputed to Sysco based on the settlement with McGill is meritless. La. C.C.P. art. 1039. Sysco specifically denied liability to McGill and reserved all claims against Jet Spray and U.S. Fire.
In support of its motion for summary judgment on the issue of Sysco's negligence, U.S. Fire produced two reports concerning the product from Edward Jensen, an engineer. Neither of these reports were sworn or certified as required by La.C.C.P. art. 967. Moreover, the record is devoid of any affidavits or depositions that support U.S. Fire's assertions. In Vassallo, Inc. v. Southwestern Packing & Seals Co., 476 So.2d 925 (La. App.2d Cir.1985), the supporting affidavit referred to three uncertified exhibits that allegedly supported movant's position. Citing article 967, this court reversed the trial court's grant of the motion for summary judgment on the grounds of insufficient evidence. Article 967 implies that failure to support a motion for summary judgment with affidavits results in the opponent being able to rely merely upon the allegations or denials in his pleadings. Hall v. Babin, 506 So.2d 658 (La.App. 4th Cir.1987); Cf. Mays v. Aetna Casualty & Surety Company, 242 So.2d 264 (La.App.2d Cir.1970), (Affidavit containing facts gleaned from a deposition not filed of record insufficient to support summary judgment). In light of the fact that the record contains neither an affidavit nor deposition of the engineer, and the two reports are not certified, the evidence is insufficient to support summary judgment on the issue of Sysco's alleged independent negligence which Sysco's pleadings deny.[1] Whether the accident resulted from negligent installation, inadequate warning, defective design, or operator error is a question of material fact that has not been precluded by the information filed by U.S. Fire in support of its motion for summary judgment.

Conclusion
U.S. Fire drafted an insurance contract to protect against bodily injury caused by Jet Spray's product. The contract covered "all vendors" who distributed or sold Jet Spray's product in the regular course of business. Neither the term vendor nor distributor were defined in the contract. U.S. Fire cannot avoid liability as a matter of law by requesting the court to accept the most restrictive definitions of these words, especially when the definitions provided by U.S. Fire would operate against the expected and reasonable scope of coverage.
The other arguments advanced on behalf of U.S. Fire in support of its motion for summary judgment require a finding of fact by the trial court. Accordingly, neither the policy provisions, Sysco's alleged independent negligence, nor Sysco's settlement with McGill provides a legal basis for granting summary judgment. We render judgment denying U.S. Fire's motion for summary judgment and remand the case for further proceedings.
REVERSED, RENDERED AND REMANDED.
NOTES
[1] Moreover, the two reports appear to contradict one another. The first report concluded: "It is more likely than not that the installation of the replacement plug was improperly accomplished, allowing the metal machine housing to become electrically active, thereby injuring Ms. McGill." The second report, without retracting the initial statement concluded: "The warnings and information regarding the operation of the jet spray machine were inadequate to prevent injury."