DSUSAN M. CHEHARDY, Judge.
This is a medical malpractice action, in which the plaintiff appeals a summary judgment that dismissed her lawsuit. We reverse and remand.
Sandra Ullrich filed suit against West Jefferson General Hospital, Dr. Richard Helman, Anesthesia and Pain Management, Inc. and Dr. Susan J. Estrada-Brod-mann,[1] alleging that on or about November 22, 1999 the plaintiff underwent surgery by Dr. Helman in which her anesthesia was administered by Dr. Estrada-Brod-mann of Anesthesiology and Pain Management, Inc. The plaintiff alleged that as a result of inadequate care provided by the surgery staff and anesthesiologists, one of her teeth was knocked out and she swallowed it during surgery. She alleged that the tooth lodged in her lung and caused her to develop postoperative respiratory difficulty that continued for weeks afterward.
*9 Approximately five weeks post-surgery, due to her continued respiratory complaints and loss of weight, a chest x-ray was finally ordered, which revealed she had a tooth lodged in her left lung. The tooth was removed by a physician. She asserted that, due to the failure of her treating physicians to order testing or x-rays |3following surgery, her treatment was not handled properly and she was given substandard care.
Anesthesia and Pain Management, Inc. and Dr. Estrada-Brodmann filed a Motion For Summary Judgment on the basis that the plaintiff had no expert testimony to carry her burden of proof pursuant to La. R.S. 9:2794. Movers noted the medical review panel found the evidence does not support the conclusion that the defendants failed to meet the applicable standard of care.[2] The defendants asserted that expert testimony is necessary in this case to establish deviation from the applicable standard of care, because the defendants will present expert testimony establishing there was no deviation from the appropriate standard. The defendants argued that without an expert, the plaintiff cannot carry her burden of proof and, hence, the case against the movers should be dismissed on summary judgment.
In opposition, the plaintiff asserted that no medical expert testimony is necessary because the situation in this case is res ipsa loquitur. She contended the disputed material facts are whether a molar tooth was dislodged and whether she aspirated the dislodged tooth into her lung while she was under the treatment and care of the defendants during her hysterectomy. She stated that she went into surgery breathing normally, came out of surgery with breathing difficulties, subsequently the breathing difficulties were ascribed to a tooth lodged in her lung, and upon removal of the tooth her breathing returned to normal. Further, she pointed out, the finding of the medical review panel does not preclude a ^determination by the trier of fact that the defendants acted negligently. In support of her opposition the plaintiff attached an affidavit from Dr. Roland Caire, Jr., D.D.S., who examined her on June 12, 2000. He stated as follows, in pertinent part:
After radiographic and oral examination, it is noted that Ms. Ullrich is missing several teeth and she has periodontal disease which would contribute to loosening of teeth. It appears that a right maxillary molar was lost more recently than the other missing teeth. There is no healing socket evident in the radiograph, but there is a deep furrow in the soft tissue in this area.
With what I have available to me at this date, I can only speculate regarding the loss of this tooth. It is very possible that the tooth was loose at the time of the initial surgery. It could have been inadvertently extracted and pushed forward to its position in the lung during intubation or dislodged during removal of the respiratory apparatus and fallen down into the patient’s trachea. Because of bone loss in this area, the bleeding could have been minimal— there would be minimal damage to tissues in the extraction site. Because the *10 patient reveals a history of fear and apathy regarding tooth care, and because of other missing teeth, she could have failed to notice the tooth’s absence.
This explanation is plausible given the information at my disposal.
In her own affidavit the plaintiff relates that she had no difficulty breathing before the surgery; she experienced difficulty breathing immediately after she came out of the effects of the anesthetic administered before her surgery; and after her surgery she experienced difficulty breathing, a pain in her chest, and coughed up a lot of mucus and sputum. She was in the hospital for a week and was told it was usually only two days to recover. She continued to have difficulty breathing.
Approximately five weeks after the surgery, when she went in for a checkup her doctor thought she was having an asthma attack. He took x-rays, which' showed |Ka tooth was lodged in her lung. On December 30, 1999 she underwent a procedure to remove the tooth from her lung. After removal of the tooth, she felt like she was back to normal, without any chest pain, breathing difficulty, or excess mucus or sputum. She believed a molar tooth was dislodged while she was under- anesthetic during her hysterectomy.
The defendants supplemented their Motion For Summary Judgment with the following Statement of Uncontested Facts:
1. Plaintiff suffered from advanced chronic periodontist [sic].
2. Plaintiff lost numerous teeth due to this condition.
3. Plaintiff had mobility in the vast majority of her remaining teeth.
4. Plaintiff had not seen ■ a dentist in the last five years as of March 2001.
5. Plaintiff had no respiratory problems upon discharge from her November 19,1999 surgery.
6.Plaintiff did not report tooth loss until five (5) weeks after surgery.
Together with copies of medical records, the defendants filed a copy of a comprehensive dental report by Dr. John A. Franck, Jr., D.D.S., who examined the plaintiff on May 25, 2001. We note, however, that the report is not admissible in support of the motion for summary judgment because it is not sworn, that is, it is not in the form of either testimony or affidavit. See McGill v. Cochran Sysco Foods, Div. of Sysco Corp., 29,154, p. 7 (La.App. 2 Cir. 2/26/97), 690 So.2d 952, 956, writ denied, 97-0798 (La.5/1/97), 693 So.2d 730.
The defendants noted that the only expert the plaintiff had consulted was a dentist and that she does not have an expert anesthesiologist to support her allegations.
After a hearing the trial court granted summary judgment and dismissed the claims against Anesthesia and Pain Management, Inc. and Dr. Susan Estrada-Brodmann. In oral reasons for judgment, the trial judge stated:
Ifil do not find that there was an obvious act of negligence on the part of the anesthesiologist. This is one of those kind of cases where an expert is required. The Court rejects the suggestions of the dentist who is not an anesthesiologist as to what their duties and responsibilities should be. It is for that reason that the law speaks to the necessity of an expert in the field of the same [as] that which the doctor is who has been challenged because that .doctor, that expert is well aware of the standard of care imposed upon that particular expertise. I da not find that an expert has been presented or sufficient evidence which creates a genuine issue of material fact such that this matter should go before a jury. I therefore *11 grant the Motion for Summary Judgment.
On appeal the plaintiff asserts the trial court erred by ruling that an expert is required in this case, in not applying the exception of La.R.S. 9:2794(0 because the doctrine of res ipsa loquitur is applicable, and by not allowing the evidentiary process to continue beyond a hearing on a Motion for Summary Judgment.
La.R.S. 9:2794 provides that in a medical malpractice action against a physician in a particular specialty, the plaintiff has the burden of proving the following matters:
A. In a malpractice action based on the negligence of a physician ..., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
* * *
|7C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician.... The jury shall be further instructed that injury alone does not raise a presumption of the physician’s ... negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable.
In Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La.1991), our supreme court outlined the burden of proof and appellate standard of review as follows:
In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor’s treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained .... Resolution of each of these inquires are determinations of fact which should not be reversed on appeal absent manifest error. [Citations omitted.]
See also, Nicoll v. LoCoco, 97-83, pp. 5-6 (La.App. 5 Cir. 10/28/97), 701 So.2d 1062, 1065.
A plaintiff can prevail when she does not introduce an expert witness to testify as to the applicable standard of care, its breach, and causation, when a defendant/physician or a defense expert testifies regarding the standard of care and the objective evidence at trial is such that a lay jury can infer negligence from the facts. Pfiffner v. Correa, 94-0924, p. 2 (La.10/17/94), 643 So.2d 1228, 1230. “Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examina *12 tion, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body, from which a lay person can infer negligence.” Id., 94-0924 at p. 8, 643 So.2d at 1233.
| RThe plaintiff argues that here an expert is not needed because it is reasonable to conclude that dislodging a loose tooth by pushing a tube down the person’s throat and allowing it to be aspirated into the patient’s lung is an act from which a lay person can infer negligence.
The doctrine of res ipsa loquitur applies when: (1) the accident would not normally occur in the absence of negligence, (2) there is an absence of direct evidence to explain the activities leading to the injury, and (3) the accident or injury was caused by an agency on instrumentality within the actual or constructive control of the defendant.... “Res ipsa loquitur applies when ‘circumstances suggest the defendant’s negligence as the most plausible explanation for the injury.’ ” ... Thus, plaintiffs must show that the injury would not normally occur in the absence of negligence. [Citations omitted.]
Dean v. Ochsner Medical Foundation Hosp. and Clinic, 99-466, p. 7 (La.App. 5 Cir. 11/10/99), 749 So.2d 36, 39-40.
The standard for applying res ipsa loquitur is whether reasonable minds could differ. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 668 (La.1989). As long as the fact-finder can reasonably conclude that plaintiffs injuries were, more probably than not, caused by defendant’s negligence under the particular facts of a ease, the doctrine of res ipsa loquitur applies. Goodliffe v. Parish Anesthesia Associates, 95-357 (La.App. 5 Cir. 10/18/95), 663 So.2d 769, 778, writ denied, 95-2780 (La.2/16/96), 667 So.2d 1051.
In this case it is clear that reasonable minds could differ. Defendants emphasize that the plaintiff already had numerous missing teeth, that her remaining teeth are mostly decaying and loose, and that the plaintiff herself was unaware the tooth was missing until x-rays showed it lodged in her lung. In contrast, plaintiff emphasizes that she had no respiratory problems prior to her surgery, she underwent surgery during which she was intu-bated through the mouth for anesthesia, following the surgery she complained of respiratory problems, and | ¿following the discovery and removal of the tooth several weeks later her respiratory problems ceased.
We note, further, that the malpractice review panel itself could find no literature regarding similar instances. That lack of finding could as easily be interpreted in plaintiffs favor as against her. We believe a jury could decide that the unexplained presence of the tooth in her lung was surely attributable to the intubation and/or other procedures performed by defendants during her surgery and, thus, that res ipsa loquitur is applicable. Therefore, the trial court erred in granting the motion for summary judgment.
Accordingly, the judgment is reversed and the matter is remanded for further proceedings. Costs of this appeal are assessed against the defendants-appellees.

REVERSED AND REMANDED.

CANNELLA J., concurs.
fCANNELLA, J., concurs.
In my view there are material issues of fact that preclude summary judgment at this juncture of the case. Accordingly, I concur in the majority decision to reverse the summary judgment.

. The anesthesiologist's last name is spelled "Estrada-Brodman” in the plaintiffs pleadings, but is spelled "Estrada-Brodmann” in the defendants' pleadings in the district court. We adopt the spelling employed by the defendant.

. With respect to Anesthesia & Pain Management, Inc. and Dr. Susan J. Estrada-Brod-mann, the medical review panel stated:
I. Based upon review of the anesthesia record, PACU record and medical records presented, there was no evidence indicating mouth trauma or new tooth loss.
2. The patient did not complain of any new tooth loss during her hospitalization and postoperatively until she had a chest x-ray.
3. None of the panelists have seen any case in the literature or in their personal practices of molar tooth loss from administration of general anesthesia.