818 So.2d 301 (2002)
Dolly McGILL, Plaintiff-Appellee,
v.
COCHRAN-SYSCO FOODS, et al, Defendants-Appellants.
No. 35,898-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*302 Crawford & Anzelmo, by Donald J. Anzelmo, Monroe, for Defendants-Appellants, Sysco Foods Corp. and Cochran-Sysco Foods.
*303 Irwin, Fritchie, Urquhart & Moore, by Gus A. Fritchie, III, Slidell, for Third Party Defendant-Appellee, U.S. Fire Ins. Co.
Davenport, Files & Kelly, by William G. Kelly, Jr., Metairie, for Defendant-Appellee, Jet Spray Corp.
Before BROWN, STEWART and KOSTELKA, JJ.
STEWART, J.
After being named as defendants in a tort suit by Dolly McGill, Cochran-Sysco Foods and Sysco Corporation (hereinafter referred to jointly as "Sysco") filed a cross claim against Jet Spray Corporation ("Jet Spray"), also a defendant in McGill's suit, and a third party demand against Jet Spray's liability insurer, U.S. Fire Insurance Company ("U.S.Fire"). Sysco sought indemnification from Jet Spray and alleged a breach of contract due to Jet Spray's failure to maintain insurance naming Sysco as an additional insured. In its third party demand, Sysco alleged that the U.S. Fire policy provided coverage for it as to McGill's claims. The trial court rejected both Sysco's cross claim and third party demand upon finding that Sysco, through the acts of its employee, was solely at fault in causing McGill's injuries. Sysco appeals. For the reasons expressed, we affirm the trial court's judgment.

FACTS
On September 18, 1992, Dolly McGill received an electrical shock when she inserted her hand inside the top compartment of an automatic tea dispenser while trying to adjust the strength of the iced tea. McGill was an employee of North Monroe Community Hospital ("NMCH") and was adjusting the tea strength as directed by Cynthia Posey, an operations supervisor in NMCH's dietary department. Adjusting the strength of the tea required the insertion of an Allen wrench into an opening consisting of interior and exterior holes on the tea side of the dispenser. Once inserted, the wrench was turned to strengthen or weaken the tea. However, the wrench could not be inserted into the holes on the tea side because the holes were not properly aligned. Sysco's marketing representative, Thomas West, was aware of the misaligned holes and demonstrated to Cynthia Posey how to insert the Allen wrench by lifting the top lid of the tea dispenser and pressing down on an interior receptacle to align the holes.
Following her accident, McGill filed suit for damages naming Jet Spray, Sysco, and Sysco's liability insurer, Employers' Insurance Company of Wausau, as defendants. The tea dispenser, a Model LT-12 tea jet, was manufactured by Jet Spray which sold it to Sysco. In turn, Sysco installed the tea dispenser at NMCH for its use so long as it purchased tea and lemonade mix from Sysco. Sysco retained ownership of the dispenser.
Sysco's cross claim against Jet Spray was based on a hold harmless agreement executed by Jet Spray on June 1, 1992. The hold harmless agreement provided for indemnification except for claims "caused by the negligence of Buyer," meaning Sysco, and required Jet Spray to name Sysco as "an additional insured with respect to comprehensive general, product, automobile and excess liability coverages." Sysco sought reimbursement from Jet Spray for all fees and costs incurred in defending against McGill's claims and indemnification for any liability it might incur. Sysco also sought damages for breach of contract by Jet Spray for its failure to obtain insurance and name Sysco as an additional insured as required by the hold harmless agreement.
In its third party demand against U.S. Fire, Sysco alleged that it was an additional *304 insured under the policy and sought penalties and attorney fees for U.S. Fire's refusal to provide a defense and indemnification. Jet Spray's liability coverage with U.S. Fire included a vendor's endorsement.[1]
After the start of trial, the defendants in the principal demand settled with McGill for $150,000. The respective insurers of Sysco and Jet Spray each paid one-half of the settlement amount. As a part of the settlement, Sysco reserved the right to pursue its cross claim and third party demand. These incidental matters were submitted to the trial court for resolution based on exhibits, depositions, and testimony from the trial of McGill's claims.
The initial issue before the trial court was whether McGill's accident was due to any fault on the part of Sysco. In written reasons for judgment, the trial court found that the tea dispenser installed at NMCH by Sysco did not have properly aligned holes on the interior and exterior of the machine which would allow for the adjustment of the tea strength. The problem was reported by NMCH staff to Tom West, an employee of Sysco, who inspected the machine and found the alignment problem. Instead of repairing or replacing the machine, West demonstrated how to remedy the problem by opening the machine and depressing an interior portion of it to make the holes line up. The part of the machine opened by West contained electrical wiring and was never intended to be used for the purpose demonstrated by West. There was no evidence that the procedure shown by West was approved or authorized by the manufacturer. The trial court concluded that McGill was injured by following the procedure shown by West and by entering a portion of the machine not intended to be entered. Accordingly, the trial court found that the negligent acts of Sysco's employee caused McGill's injury. The trial court determined that Sysco was solely at fault in causing McGill's injuries and denied Sysco's cross claim against Jet Spray and third party demand against U.S. Fire.
Following the trial court's adverse judgment, Sysco filed the instant appeal and assigned four errors for review. Sysco asserts that (1) the trial court failed to consider its claim that the U.S. Fire policy insuring Jet Spray also provided coverage to Sysco for the claims of McGill; (2) the trial court failed to consider its breach of contract claim against Jet Spray; (3) the trial court erred in denying its claim for contractual defense and indemnity against Jet Spray in connection with McGill's claims; and (4) that it is entitled to recover additional attorney's fees, expenses, and costs associated with the instant appeal.

DISCUSSION
To address the issues raised by Sysco on appeal, we must first examine the applicable provisions of the hold harmless agreement, which is the basis of Sysco's claims. The agreement is entitled "HOLD HARMLESS AGREEMENT AND GUARANTY/WARRANTY OF PRODUCT" and was signed by a Jet Spray representative on June 1, 1992, approximately three months prior to McGill's accident. The four-part agreement provides, in relevant part, as follows:
The undersigned person or entity ("Seller"), for value received, hereby represents and agrees as follows:
2. Seller agrees to defend, indemnify and hold harmless Buyer and its employees, *305 officers, directors and customers (individually, an "Indemnitee") from all actions, suits, claims and proceedings ("Claims"), and any judgments, damages, fines, costs and expenses (including reasonable attorneys' fees) resulting therefrom:
* * * *
(ii) brought or commenced by any person or entity against any Indemnitee for the recovery of damages for the injury, illness and/or death of any person or damage to property arising out of or alleged to have arisen out of (a) the delivery, sale, resale, labeling, use or consumption of any Product, or (b) the negligent acts or omissions of Seller; provided, however, that Seller's indemnification obligations hereunder shall not apply to the extent that Claims are caused by the negligence of Buyer.
* * * *
3. Seller agrees to maintain in affect insurance coverage with reputable insurance companies covering worker's compensation and employers' liability, automobile liability, comprehensive general liability, including product liability and excess liability, all with such limits as are sufficient in Buyer's reasonable judgment, to protect Seller and Buyer from the liabilities insured against by such coverages. Seller shall furnish a certificate evidencing the obligation of its insurance carriers not to cancel or materially amend such policies without thirty (30) days prior written notice to Buyer. In addition, Buyer shall be named as an additional insured with respect to the comprehensive general, product, automobile and excess liability coverages specified herein and all such policies shall provide a waiver of subrogation in favor of Buyer.
4. This Guaranty and Agreement is continuing and shall be in full force and effect and shall be binding upon the Seller with respect to each and every Product shipped or delivered to Buyer by the Seller before the receipt by the Buyer of written notice of revocation thereof.
Sysco's appeal questions whether Jet Spray met its obligations under this agreement.

Indemnification
The first issue we will address is whether the trial court erred in denying Sysco's claim against Jet Spray for contractual defense and indemnity in connection with McGill's claim for damages. Sysco argues that the clear and unambiguous language in the second part of the hold harmless agreement entitles it to full indemnification from Jet Spray for the costs, expenses, and damages associated with McGills' claim. Moreover, Sysco argues that the trial court erred in finding it at fault in causing McGill's injuries. It is Sysco's contention that the injuries to McGill were caused by a defect in the tea dispenser and that the fault is Jet Spray's. In opposition, Jet Spray argues that the trial court was correct in finding Sysco at fault in causing McGill's injuries as it was due to the intervention of Sysco's employee that McGill was exposed to the risk of electrical shock. Because there is fault on the part of Sysco, Jet Spray asserts that it is not contractually obligated to indemnify Sysco.
The general rules governing the interpretation of contracts apply in construing indemnity contracts. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation *306 may be made in search of the parties' intent. La. C.C. art.2046. Agreements to indemnify are strictly construed, and the party seeking to enforce such an agreement bears the burden of proof. Adams v. Falcon Equipment Corporation, 30,754 (La.App.2d Cir.8/21/98), 717 So.2d 282, writs denied, 98-2472 (La.11/18/98), 729 So.2d 1 and 98-2451 (La.11/20/98), 729 So.2d 561; Liem v. Austin Power, Inc., 569 So.2d 601 (La.App. 2d Cir.1990). Moreover, indemnity is not available to a party who is actually negligent. D & O Contractors v. Terrebonne Parish Sch. Bd., 545 So.2d 588 (La.App. 1st Cir.1989), writ denied, 550 So.2d 654 (La.1989). An indemnity contract indemnifying an indemnitee against his own negligence is to be strictly construed; such a contract will not be construed to indemnify an indemnitee against losses resulting from his own negligence unless such an intent is expressed in unequivocal terms. Adams v. Falcon Equipment Corp., supra, citing Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977) and Perkins v. Rubicon, Inc., 563 So.2d 258 (La.1990).
The contract at issue contains no unequivocal expression requiring Jet Spray to indemnify Sysco for losses resulting from Sysco's own negligent acts. By its terms, the contract requires only that Jet Spray indemnify Sysco for losses resulting from Jet Spray's negligence. The contract also provides that Jet Spray's indemnification obligations "shall not apply to the extent that Claims are caused by the negligence of Buyer." Thus, as provided by the clear and explicit terms of the agreement, Jet Spray has no indemnification obligation to Sysco if, as determined by the trial court, Sysco was at fault in causing McGill's injury.
The record shows that Sysco, either through the installer of the tea dispenser or through West, provided NMCH with an Allen wrench to be used to adjust the tea strength. West demonstrated how to adjust the strength of the drink and learned of the alignment problem on the tea side of the dispenser. Cynthia Posey watched as West lifted the lid of the dispenser, put his hand into the interior compartment, and pressed down in order to get the holes to line up and the wrench inserted. Although West stated at his deposition that he unplugged and turned the machine off before entering the top compartment and that he used a screwdriver to open the top lid, Posey did not recall West using a screwdriver or mentioning anything about first turning the machine off. West also stated that he told Posey to call him if there were any problems. However, West left the Allen wrench with Posey whose understanding was that any adjustments in the strength of the tea were to be made by NMCH. Posey even made the adjustment herself a couple of days prior to McGill's accident without any difficulty and without having to unscrew the top lid to get into the compartment. When further complaints were made about the tea strength, Posey instructed McGill how to make the adjustment as had been demonstrated by West.
Based on this evidence, we find that the trial court was correct in finding Sysco negligent. Sysco's employee knew of the problem with the tea dispenser and demonstrated a dangerous method of correction instead of repairing or replacing the dispenser. West's instruction to Posey to call if there were any problems was not sufficient to warn Posey of the danger involved in entering the interior compartment of the dispenser or to indicate that the tea side should not be adjusted by NMCH. Posey was left with the Allen wrench and the impression that adjustment of the tea strength was the responsibility of NMCH, even though the holes on the tea side were not properly aligned. *307 Moreover, the expert depositions and testimony do not establish negligence on the part of Jet Spray in causing McGill's injury and do not exonerate Sysco from liability for the negligent acts of its employee, who exposed NMCH's employees to the danger of electrical shock through his demonstration of how to adjust the tea side of the dispenser by entering the interior of the machine.
The trial court's factual findings, even when based solely on a written record, depositions, and documentary evidence, are subject to the manifest error standard of review and entitled to great deference. Shephard on Behalf of Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; Virgil v. American Guar. & Liab. Ins. Co., 507 So.2d 825 (La.1987). Applying this standard of review, we find no error in the trial court's factual findings regarding the negligence of Sysco.
Because Sysco was at fault in causing McGill's injury, there is no contractual indemnity under the terms of the hold harmless agreement. The agreement provides that Jet Spray has no indemnification obligation "to the extent that Claims are caused by the negligence of Buyer." We find that McGill's claim was caused by the negligence of Sysco, the buyer, and that Sysco cannot claim indemnification for its own negligence. Accordingly, Sysco's claim for contractual defense and indemnity against Jet Spray is denied.

Insurance Coverage
The second issue to be addressed is whether the U.S. Fire policy insuring Jet Spray also provides coverage to Sysco for McGill's claims. The trial court denied this claim on the basis of Sysco's fault in causing McGill's injury. Sysco contends that it is covered by a vendor's endorsement included in the U.S. Fire policy which provides coverage with respect to bodily injury arising out of Jet Spray's products distributed or sold in the regular course of business by a vendor. Sysco argues that it is a vendor and that it distributed Jet Spray's product to NMCH in the regular course of its business. U.S. Fire contends that the vendor's endorsement does not provide coverage for the negligent acts of Sysco.
Included as an "insured" in the U.S. Fire policy by application of the vendor's endorsement is the following, including coverage exclusions:
(A)ny person or organization (referred to below as vendor) ... but only with respect to "bodily injury" or "property damage" arising out of "your products"... which are distributed or sold in the regular course of the vendor's business, subject to the following exclusions:
1. The insurance afforded the vendor does not apply to:
a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
b. Any express warranty authorized by you;
c. Any physical or chemical change in the product made intentionally by the vendor;
d. Repackaging, unless unpackaged solely for the purpose of inspection, demonstration, testing, ...;
e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of the products;

*308 f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product.
g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.
Vendor's endorsements have been interpreted as providing coverage where the vendor is found strictly liable for selling a defective product and excluding coverage where the vendor is found to be independently negligent. See Hulsey v. Sears, Roebuck and Co., 96-2704 (La.App. 1st Cir.12/29/97), 705 So.2d 1173 and Easton v. Chevron Industries, Inc., 602 So.2d 1032 (La.App. 4th Cir.1992), writs denied, 604 So.2d 1315 and 604 So.2d 1318 (La.1992). The language of the endorsement, which extends coverage to damage "arising out of Jet Spray's products, and the exclusions to coverage support the interpretation of the endorsement as providing coverage when damage is due to some defect in the product and not to negligence on the part of the vendor.
In Easton, supra, Head and Engquist was found to be negligent in training Chevron's employees in the proper use of a crane that it sold to Chevron. Head and Engquist sought defense and indemnification from National Union Insurance which provided coverage to the manufacturer of the crane, Grove Manufacturing. The claim was based on a vendor's endorsement in the policy. The court concluded that while coverage might be afforded under the endorsement to Head and Engquist as an additional insured if found to be strictly liable for selling Gove's crane, Head and Engquist could not avail itself of coverage in this instance since it was found to be negligent based on its own acts and its assumption of the duty to train Chevron's employees in the use of the crane.
Similarly, in the case sub judice, McGill alleged that Sysco was liable through its own acts of negligence, which included its failure to properly install, inspect and maintain the machine and its failure to warn of electric currents. The trial court found Sysco solely at fault in causing McGill's injury, and this finding is supported by a preponderance of the evidence. Because McGill's injury was caused by the negligence of Sysco through its employee and did not "arise out of" Jet Spray's products, we find that no coverage is afforded to Sysco under the vendor's endorsement of the U.S. Fire policy.
Moreover, the vendor's endorsement excludes coverage for "(d)emonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product." The record establishes that McGill's injury occurred as a result of servicing operations performed by Sysco on the premises of NMCH and that these operations were not in connection with a sale of the dispenser. Application of this exclusion would preclude coverage for Sysco under the vendor's endorsement. Accordingly, we find no error in the trial court's rejection of Sysco's third party demand against U.S. Fire.

Breach of Contract
The third issue to be addressed is whether the trial court erred in rejecting Sysco's claim for breach of contract against Jet Spray upon finding that Sysco was solely at fault in causing McGill's injury. Sysco contends that Jet Spray failed to obtain insurance coverages and name it as an additional insured under such coverages, all as specified in the hold harmless agreement. Sysco asserts that Jet Spray's failure to do so constitutes a breach of *309 contract for which it is liable. Jet Spray contends that it met its contractual obligations by providing coverage under the vendor's endorsement of the U.S. Fire policy and that it had no obligation under the hold harmless agreement to provide liability insurance to protect Sysco against its own negligence.
When interpreting a contract, each provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050. The contract at issue requires Jet Spray to indemnify Sysco for damages arising out of "the delivery, sale, resale, labeling, use or consumption" of Jet Spray's products or negligence on the part of Jet Spray. The hold harmless agreement specifically excludes indemnification "to the extent that Claims are caused by the negligence of Buyer." We have already affirmed the trial court's finding that McGill's injury was caused by the negligence of Sysco and that Jet Spray owes Sysco no contractual indemnification as a result of McGill's claim. Finding that Jet Spray nevertheless obligated itself to obtain insurance coverage protecting Sysco from its own acts of negligence would run counter to the meaning and intent of the hold harmless agreement, which is to protect Sysco from liability for a defectively manufactured product or other act of negligence by Jet Spray. Moreover, by including a vendor's endorsement in the U.S. Fire policy, Jet Spray provided coverage protecting Sysco as an additional insured from liability due to bodily injury or property damage arising out of Jet Spray's product as intended by the agreement between them.
In Adams v. Falcon Equipment Corporation, supra, this court reversed a summary judgment finding that a lessee (Breck) owed a duty to indemnify a lessor (Falcon) of equipment under all circumstances due to an indemnity agreement along with a provision requiring the lessee to secure insurance naming the lessor as an additional insured. The lessee did not procure insurance as required. This court ruled that the indemnity agreement, even with the requirement that Breck obtain insurance naming Falcon as an additional insured, did not require Breck to hold Falcon harmless from Falcon's own negligence. This court did not recognize the requirement of obtaining insurance apart from the indemnity agreement. Nor do we in this instance.
Accordingly, we find that Jet Spray satisfied its obligations under the hold harmless agreement, that it did not breach the contract with Sysco, and that is it not liable to Sysco for damages. Having affirmed the trial court's judgment with regard to these three issues raised by Sysco on appeal, we need not address Sysco's final claim for attorney's fees, expenses, and costs associated with this appeal.

CONCLUSION
For the reasons that have been set forth, we affirm the trial court's rejection and dismissal of Cochran-Sysco Foods and Sysco Corporation's cross claims against Jet Spray Corporation and third party demand against U.S. Fire Insurance Company. Costs of this appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] Summary judgment in favor of U.S. Fire on the coverage issue was reversed in McGill v. Cochran Sysco Foods, et al., 29,154 (La. App.2d Cir.2/26/97), 690 So.2d 952, writ denied, 97-0798 (La.5/1/97), 693 So.2d 730, and the matter remanded for further proceedings.