JOY COSSICH LOBRANO, Judge.
|,These consolidated appeals arise from wrongful death and survival actions filed by either a spouse or children of ten residents of St. Rita’s Nursing Home (“St. Rita’s”) who died at the facility during the aftermath of Hurricane Katrina.[1] The defendants pertinent to this appeal include Buffman Inc. d/b/a St. Rita’s Nursing Home; Salvador A. Mangano, Sr., and Mabel B. Mangano, the owners and operators of St. Rita’s; and the Louisiana Nursing Home Association Malpractice and General Liability Trust, their liability insurer.
The plaintiffs settled their claims with the defendants reserving their rights against the Louisiana Patient’s Compensation Fund Oversight Board (“PCF”), claiming that the defendants’ failure to evacuate the nursing home prior to the hurricane constitutes medical malpractice pursuant to the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq. (“MMA”), and thus the PCF is liable for sums in excess of those received in settlement.[2] The PCF, an intervenor, filed pa motion for summary judgment, arguing that the decision made by defendant Mabel Mangano to not evacuate the facility is an administrative decision not covered under the MMA. The trial court granted the motion for summary judgment and dismissed the plaintiffs’ claims against the PCF. The plaintiffs appealed. For the reasons that follow, we affirm the judgments of the trial court.
An appellate court reviews a summary judgment de novo, using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). “The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). As to the burden of proof on a motion for summary judgment, La. C.C.P. art. 966(C)(2), provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out *507 to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
| ¡¡The parties agree that St. Rita’s was a qualified health care provider under the MMA. See La. R.S. 40:1299.41(A)(1). Also, a nursing home resident who receives or should have received health care from a licensed health care provider, under contract, expressed or implied, is considered a “patient” under the MMA. See La. R.S. 40:1299.41(A)(3). Thus, the issue presented is whether St. Rita’s failure to evacuate the residents prior to Hurricane Katrina constitutes medical malpractice under the MMA.
The MMA and its limitations on tort liability for a qualified health care provider apply only to claims “arising from medical malpractice,” and that all other tort liability on the part of the qualified health care provider is governed by general tort law. LaCoste v. Pendleton Methodist Hospital, 07-0008, 07-0016, pp. 6-7 (La.9/5/07), 966 So.2d 519, 524 (citing Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 818 So.2d 303, 315, and Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451, p. 5 (La.12/1/04), 888 So.2d 782, 786). The MMA constitutes a special legislative provision in derogation of the general rights available to tort victims and therefore must be strictly construed. Id. at p. 7, 966 So.2d at 524. The Louisiana court interprets the MMA and determines whether the delict sounds in general negligence or falls within the purview of the MMA. Id. at p. 12, 966 So.2d at 527.
The MMA defines “malpractice” as:
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services |4timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La. R.S. 40:1299.41(A)(8).
The MMA defines “tort” and “health care” as follows:
“Tort” means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
La. R.S. 40:1299.41(A)(7).
“Health care” means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement, or during or relating to or *508 in connection with the procurement of human blood or blood components.
La. R.S. 40:1299.41(A)(9).
In deciding this matter, LaCoste, supra, and Mineo v. Underwriters at Lloyds, London, 07-0514 (La.App. 4 Cir. 10/22/08), 997 So.2d 187, are pertinent. The LaCoste case arose from the alleged wrongful death of a ventilator dependent patient at Pen-dleton Methodist Hospital during the aftermath of Hurricane Katrina. The plaintiffs alleged that the decedent had died “as a result of the failure of the hospital to design, construct, and/or maintain a facility so as to provide sufficient | flemergency power to sustain life support systems and/or to prevent floodwaters entering the structure, as well as the result of the failure of the hospital to implement an adequate evacuation plan, to have a facility available for the transfer of patients, and/or to have in place a plan to transfer patients in the event of a mandatory evacuation.” LaCoste, 07-0008, 07-0016, p. 1, 966 So.2d 519, 521. The defendant hospital, a qualified health care provider under the MMA, filed a dilatory exception of prematurity on the basis that the plaintiffs’ claims sounded in medical malpractice, and thus, pursuant to the MMA, required a review by a medical review panel before litigating the suit in state court. Id. at p. 3, 966 So.2d at 522. The trial court denied the exception. Upon review, this court reversed the trial court, in part, concluding that whether the hospital’s emergency electric-generating equipment was adequate or not, as well as the decision to evacuate or not, fell within the purview of the MMA. Id. at p. 4, 966 So.2d at 523 (citing LaCoste v. Pendleton Methodist Hosp., L.L.C., 06-1268, pp. 7-8 (La.App. 4 Cir. 12/6/06), 947 So.2d 150, 157).
The Louisiana Supreme Court granted writs[3] to consider the plaintiffs’ claims, including whether or not the hospital’s failure to implement an adequate evacuation plan and decision to “shelter in place” constituted medical malpractice within the meaning of the MMA. The Court analyzed the allegations of negligence utilizing the six factors established in Coleman v. Deno, 01-1517, pp. 17-18, 813 So.2d at 315-16, to assist a court in determining whether a claim sounds in medical malpractice and must first be presented to a medical review panel:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
|fi(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition;
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
LaCoste, 07-0008, 07-0016, p. 8, 966 So.2d at 524-25. The Court determined that the allegations of misconduct did not relate to medical treatment or the dereliction of professional medical skill and instead related to the deficient design of the hospital, lack of emergency power, failure to implement an evacuation plan, and failure to have a transfer facility for patients. Id. at *509 pp. 9-10, 966 So.2d at 525-26. The Court stated that “reading the plaintiffs’ allegations in light of the strict application of the [MMA] does not lead to the conclusion that they relate to medicine, medical care, or medical treatment.” Id. at p. 10, 966 So.2d at 526. The Court noted that the plaintiffs’ amended petition did not allege that “the medical decision by any physician or nurse resulted in the failure to transfer [the] patient and that such failure resulted in her death.” Id. at p. 15, 966 So.2d at 528.
In Mineo, supra, the children of a nursing home resident who died at Chateau Living Center during the aftermath of Hurricane Katrina filed a wrongful death suit alleging that the nursing home was negligent in failing to provide adequate food, water, medicine, medical staff and emergency power, as well as failing to evacuate the residents prior to the storm. The trial court granted Chateau Living Center’s exception of prematurity, finding the claims fell within the |7purview of the MMA. Upon review, this court, relying on the decision in LaCoste, supra, reversed, in part, concluding that the nursing home’s failure to evacuate the residents and to provide adequate food and water were claims sounding in general negligence and not covered by the MMA. Mineo, 07-0514, at p. 9, 997 So.2d at 198-94.
In support of the motion for summary judgment in the instant case, the PCF submitted the deposition testimony of Mabel Mangano; Salvador Mangano; Diane Candebat, the Director of Nursing for St. Rita’s; and Harold Gamburg, Chairman of the State of Louisiana Board of Examiners for Nursing Home Administrators. It also submitted the defendants’ answers to interrogatories and other discovery requests as well as the affidavit of F. Brobson Lutz, M.D., M.P.H., a defense expert witness who specializes in internal medicine, infectious disease and public health medicine.
The deposition testimony and the defendants’ discovery answers indicate that as early as Friday, August 26, 2005, but no later than Saturday, August 27, 2005, Mabel Mangano unilaterally made the decision to not evacuate St. Rita’s and shelter in place during the hurricane unless and until the St. Bernard Parish President issued a mandatory evacuation order. A mandatory evacuation order was never issued. Ms. Mangano did not consult with St. Rita’s medical director, Ms. Candebat, or any other physician, nurse, or medical personnel in making the decision. Ms. Mangano preferred to shelter in place to allow St. Rita’s staff to provide continuous care to the residents in a familiar environment. Both Mr. and Ms. Mangano believed the facility was a sturdy, secure place for the residents during the hurricane, as they had sheltered in place during five past storms without | ^complications. Ms. Mangano had no medical training and never administered medical treatment to any of the residents of St. Rita’s.
Mr. Gamburg explained that the decision to evacuate or not evacuate a nursing facility due to an emergency, such as a hurricane, is an administrative decision made by the facility’s administrator(s).
Dr. Lutz stated that after the hurricane he reviewed the salvaged medical records of those residents who had died at St. Rita’s and noted they all had extensive, potentially life-limiting co-morbidities. Most were frail with numerous physical and cognitive impairments, making any total facility evacuation problematic. He opined that sheltering the residents in place, surrounded by a familiar staff, with adequate supplies, medications, and backup power constituted an appropriate protective measure for the residents of St. Rita’s. Dr. Lutz averred that had he been *510 asked prior to Hurricane Katrina he would have agreed with the administrator’s decision to shelter in place.
In opposition to the motion for summary judgment, the plaintiffs submitted an affidavit from Dr. David Myers, a board certified internist, nursing home medical director, and a member of the Medical Review Panel convened in the Cousins[4] matter. Dr. Myers stated that Ms. Mangano and the staff at St. Rita’s breached the applicable standard of care required of nursing homes by not transferring the residents to another facility prior to the hurricane. He averred that the failure to transfer the residents precluded St. Rita’s from providing the medical care expected and required of nursing facilities. Dr. Myers also stated that Ms. Mangano breached the applicable standard of care by not consulting with St. Rita’s |9medical director or nursing director regarding the decision to not evacuate. In addition to the affidavit, the plaintiffs submitted a copy of the Medical Review Panel opinion rendered in the Cousins matter, wherein the panel concluded St. Rita’s breached the appropriate standard of care, as “there was no attempt to evacuate the patients as detailed in the facilities (sic) evacuation plan which violated the patient’s right to a safe environment.”
The plaintiffs also offered the deposition testimony of the defendants’ expert, Dr. Lutz, who opined that an emergency evacuation plain is necessary for a nursing home to adhere to the applicable standard of medical care required of nursing homes. Dr. Lutz further opined that whether or not a nursing home complied with the applicable standard of medical care depends on the medical needs and medical conditions of the residents.
In view of the submitted evidence, we now analyze the plaintiffs’ allegations of negligence using the six Coleman factors.

(1) Whether the alleged wrong is “treatment related” or caused by a dereliction of professional skill.

The defendants’ failure to evacuate was not related to medical treatment or the dereliction of professional medical skill, but rather involved an administrative decision made solely by Ms. Mangano.

(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached.

St. Rita’s failure to evacuate or to have an adequate evacuation plan would not require expert medical evidence to prove the appropriate standard of care was breached.
| W(S) Whether the pertinent act or omission involved assessment of the patient’s condition.
Although Ms. Mangano acknowledged that she had instructed the nursing staff to assess and document the condition of each resident in the days before the hurricane, it was for the purpose of providing a host facility with recent, accurate information on each resident in the event of an evacuation. The actual decision to not evacuate did not involve the nursing director, medical director or any health care professional assessing the condition of each individual resident. The decision to shelter in place was made with respect to the entire facility and was not based on individual medical assessments.

*511
(A) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform.

In this case, the incident, i.e. St. Rita’s failure to evacuate the residents, did not involve physician-patient relationships within the meaning of the MMA. As previously mentioned, Ms. Mangano did not consult a physician, nurse, or any health care provider in deciding not to evacuate, and her decision would affect all persons at the facility, not only the residents. The fact that each nursing home resident may be considered a “patient” under the MMA, does not mean every act, omission or decision made by a nursing home administrator or staff person with respect to a resident constitutes “health care” and is within the purview of the MMA. See Lafonta v. Hotard Coaches, Inc., 07-0454 (La.App. 4 Cir. 10/10/07), 969 So.2d 686[5] (nursing home’s failure to remove a resident from the facility prior to Hurricane Katrina was not medical malpractice); Quinney v. Summit of Alexandria, 05-287 (La.App. 3 Cir. 6/1/05), 903 So.2d 1226 (nursing home’s [^failure to keep resident’s person and bed linens clean and free of bodily wastes did not constitute medical malpractice under the MMA); and, Wild v. NS’NG, Inc., 04-0933 (La.App. 1 Cir. 12/30/04), 898 So.2d 466 (nursing home’s failure to secure premises was not medical malpractice where resident exited the home through an unlocked door and was injured).

(5) Whether the injury would have occurred if the patient had not sought treatment.

Nothing in the record indicates any of the residents died as a result of medical treatment they had received or should have received at St. Rita’s. The record is insufficient for us to conclude those same residents would not have died had they been elsewhere during Hurricane Katrina.

(6) Whether the alleged tort was intentional.

This factor is not an issue in this case, as any allegations of intentional tort would not be submitted to a medical review panel.
Having analyzed the plaintiffs’ allegations of negligence using the six Coleman factors, we agree with the trial court that the decision by Ms. Mangano to not evacuate the nursing home and to shelter in place during the hurricane is an administrative decision not covered under the MMA. Though the plaintiffs have offered the expert opinions of Dr. Myers, Dr. Lutz and the Medical Review Panel to prove St. Rita’s breached the applicable standard of care required of a nursing home, the court alone determines whether the tort claim against a qualified health care provider sounds in general negligence or falls within the purview of the MMA and must first be presented to the medical review panel. See LaCoste, supra, at p. |1212, 966 So.2d at 527. Thus, we find the trial court correctly granted the PCF’s motion for summary judgment, dismissing the plaintiffs’ claims against the PCF.
Accordingly, for the reasons herein:
The May 17, 2011 judgment in Albert Montalbano, et al., v. Buffman Inc. d/b/a St. Rita’s Nursing Home, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 106-017, is affirmed;
The February 11, 2011 judgment in Emile R. Poissenot, et al., v. Salvador Manga-no, Sr., et al., 34th Judicial District Court *512 for the Parish of St. Bernard, No. 105-461, is affirmed;
The May 17, 2011 judgment in Brenda Berthelot v. Salvador Mangano, Sr., et al., 34th Judicial District Court for the Parish of St. Bernard, No. 105-433, is affirmed;
The May 17, 2011 judgment in Raymond Cousins, et al., v. The Mangano Corporation d/b/a St. Rita’s Nursing Facility, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 105-406, is affirmed;
The May 17, 2011 judgment in Margaret Lott v. Salvador A. Mangano, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 105-473, is affirmed;
The May 17, 2011 judgment in Steven Gallodoro, et al., v. Salvador A. Mangano, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 106-324, is affirmed;
The May 17, 2011 judgment in Linda Frischhertz, et al., v. Salvador A. Mangano, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 105-410, is affirmed;
113The May 17, 2011 judgment in John M. Darsam, Jr., et al., v. Buffman Inc. d/b/a St. Rita’s Nursing Home, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 106-254, is affirmed;
The May 17, 2011 judgment in Jane D. Dorand, et al., v. Buffman Inc. d/b/a St. Rita’s Nursing Home, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 106-535, is affirmed; and,
The May 17, 2011 judgment in James M. Vidrios v. Buffman Inc. d/b/a St. Rita’s Nursing Home, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 107-688, is affirmed.
AFFIRMED

. St. Rita’s was located in St. Bernard Parish inside the hurricane protection levees. After Hurricane Katrina made landfall the morning of August 29, 2005, the levees failed, causing widespread flooding. St. Rita's, which had not been evacuated, was inundated with floodwater. According to the record, the floodwater rose eight feet inside the nursing home- within fifteen minutes. As a result, thirty-five (35) residents drowned.

. The respective records indicate the Montal-bano plaintiffs settled their claims with the defendants for $115,000.00; the Poissenot plaintiffs for $100,000.00; and the Gallodoro plaintiffs for $100,000.00. The other plaintiffs’ claims settled for amounts less than $100,000.00.

. LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008, 07-0016 (La.2/2/07), 948 So.2d 184, 185.

. Raymond Cousins, et al. v. The Mangano Corporation, et al., 34th Judicial District Court for the Parish of St. Bernard, No. 105-406, and Appeal No. 2011-CA0918.

. Writ denied, 07-2208 (La. 1/11/08), 972 So.2d 1166.