MAX N. TOBIAS, JR., Judge.
_JjThe plaintiff, Dorothy Lee Burandt, appeals the trial court’s granting of an exception of prematurity in favor of the defendants, HealthSouth Corporation and HealthSouth of New Orleans, Inc. (collectively “HealthSouth”), based upon its determination that the claims brought by Ms. Burandt sound in medical malpractice and, thus, require a prior medical review panel pursuant to the Louisiana Medical Malpractice Act (“LMMA”), La. R.S. 40:1299.41, et seq. For the following reasons, we reverse the trial court’s judgment and remand the matter to the trial court for further proceedings.

Factual and Procedural Background

In this civil action for survival and wrongful death damages, the plaintiff, Dorothy Burandt, contends that her now deceased mother, Pauline Singelmann, while a patient and under the care and supervision of HealthSouth, died in the aftermath of Hurricane Katrina as a result of the negligent and intentional acts of HealthSouth. On 28 August 2006, Ms. Burandt filed suit naming as defendants, Pendleton Memorial Methodist Hospital (“Methodist Hospital”), Universal Health Services, Inc., and/or Universal Health Services Foundation, HealthSouth Corporation and/or HealthSouth of New Orleans, Inc. (collectively | ¡/‘HealthSouth”). In her original petition for damages, Ms. Burandt alleged that her mother, Ms. Singelmann, was admitted to the ICU at Methodist Hospital on 25 July 2005, for the treatment of pneumonia and multiple wounds to both heels, bruises of unknown origin, and shoulder problems. She was then transferred to the long term acute care center within Methodist Hospital that was operated by HealthSouth pursuant to a services agreement.[1]
Ms. Burandt’s petition further alleged that as Hurricane Katrina approached the area, she was advised by staff at Methodist Hospital that the hospital would not evacuate its patients for the storm. In her memorandum in opposition to Health-South’s exception of prematurity, however, Ms. Burandt averred that as the hurricane approached, she was advised by representatives of HealthSouth that they would be evacuating and transferring her mother to their facility in Baton Rouge. Relying on these representations by HealthSouth, Ms. Burandt personally evacuated to the capí-tol city where she believed her mother was being transferred. Once in Baton Rouge, Ms. Burandt contends she learned that her mother had not been evacuated as Health-South represented. Because of the widespread failure in communication systems following the hurricane’s landfall, Ms. Bu-randt was delayed in obtaining any information regarding the condition of her *239 mother. She was advised on 3 September 2005 that her mother may have died, but that her | swhereabouts were unknown. It was not until three months later, on 3 December 2005, that the decedent’s remains were identified at the St. Gabriel Temporary Mortuary.
In her original petition, Ms. Burandt alleged that as the result of the negligent and intentional acts of Methodist Hospital[2] and HealthSouth, her mother sustained severe personal injuries, which caused the decedent undue pain and physical suffering, as well as mental suffering, and ultimately led to her death. Ms. Burandt alleges the fault of HealthSouth in the following non-exclusive respects:
(1) failure to provide appropriate planning and supervision so as to accommodate the decedent’s known conditions within the context of the circumstances described hereinabove;
(2) failure to have an adequate evacuation plan for the decedent; and
(3) failure to perform the non-medical duties owed by them to the decedent.
Ms. Burandt further alleges Health-South committed intentional acts by “having abandoned the decedent while she was still under their control and supervision, though they knew that by their actions and failures to act she was substantially certain to sustain” injury and death.
On 31 January 2007, HealthSouth, a qualified health care provider pursuant to the LMMA, filed a dilatory exception of prematurity to Ms. Burandt’s petition for damages contending that all of the allegations sounded in medical malpractice and, as such, fell within the parameters of the LMMA, requiring review by a medical review panel before commencement of litigation in the state courts. HealthSouth averred that Ms. Burandt’s filing of a claim with the Louisiana Patient’s | .(Compensation Fund (“LPCF”),[3] urging nearly identical allegations only one day after filing the subject suit, bolstered its contention that her claims sound in medical malpractice and not general tort and, as such, her claims should be dismissed as premature.
Three years later, on 1 February 2010, prior to a hearing on HealthSouth’s exception of prematurity, Ms. Burandt filed an amended and supplemental petition asserting additional acts of negligence by the defendants in failing to have a facility available for the transfer of patients and in failing to have in place a plan to transfer patients in the event of mandatory evacuation. Additionally, Ms. Burandt alleged the defendants’ negligence in designing, constructing and/or maintaining a facility in such a manner that the hospital did not have sufficient emergency power to sustain life support systems and which allowed flood waters to enter the structure, thereby endangering the safety of its patients. Ms. Burandt requested that service of the amended and supplemental petition be withheld. The record on appeal reflects no service of Ms. Burandt’s February 2010 amended and supplemental petition on HealthSouth. Consequently, for purposes *240 of HealthSouth’s exception of prematurity currently before us, we treat the amended and supplemental allegations contained therein as having never been filed.
The trial of HealthSouth’s exception of prematurity as to Ms. Burandt’s original petition for damages took place on 11 May 2012. Ms. Burandt opposed HealthSouth’s exception contending that the Louisiana Supreme Court’s decision |fim LaCoste v. Pendleton Methodist Hospital, 07-0008, 07-0016 (La.9/5/07), 966 So.2d 519, controls the outcome of this case. Determining that Ms. Burandt’s negligence and intentional tort allegations were factually distinguishable from those alleged in LaCoste and that they fell within the scope of the LMMA, the trial court ruled from the bench, granting HealthSouth’s exception and dismissing Ms. Burandt’s claims without prejudice as premature. Judgment was signed on 24 May 2012.[4] Ms. Burandt subsequently filed a motion for new trial, which was denied. The instant appeal followed.

Issue Presented for Review

The sole issue we must decide on appeal is whether the claims set forth in Ms. Burandt’s original petition for damages constitute medical malpractice and, thus, fall within the provisions and purview of the LMMA, or whether they sound in general negligence.

Discussion

La. C.C.P. art. 926 provides for the dilatory exception of prematurity, which questions whether the cause of action has matured to the point that it is ripe for | (judicial determination. Williamson, 04-0451, at p. 4, 888 So.2d at 785. An action that is brought before the right to enforce it has accrued is deemed premature. Id. Prematurity is determined by the facts existing at the time the suit is filed. Sevier v. U.S. Fidelity & Guar. Co., 497 So.2d 1880, 1382 (La.1986). Evidence may be introduced to support or controvert the exception when the grounds do not appear from the petition. La. C.C.P. art. 930.
Under the LMMA, a medical malpractice claim against a private qualified health care provider like HealthSouth is subject to dismissal on an exception of prematurity if the claim has not first been presented to a medical review panel. La. R.S. 40:1299.47(A)(1); Williamson, 04-0451 at p. 4, 888 So.2d at 785. The excep *241 tion is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider. La. C.C.P. art. 926; Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119. The burden of proving prematurity is on the defendant health care provider, who must show that it is entitled to a medical review panel because the allegations of the plaintiffs petition fall with the provisions and purview of the LMMA. Williamson, 04-0451 at p. 4, 888 So.2d at 785; Spradlin, 98-1977 at p. 4, 758 So.2d at 119.
The LMMA and its limitations on tort liability for a qualified health care provider apply only to claims “arising from medical malpractice;” all other tort liability on the part of the qualified health care provider is governed by general tort law. LaCoste, 07-0008, 07-0016, at pp. 6-7, 966 So.2d at 524 (citing Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315, and Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451, at p. 5, 888 So.2d at 786); Montalbano v. Buffman Inc., 11-0753, p. 3 (La.App. 4 Cir. 3/21/12), 90 So.3d 503, 507. We, therefore, conduct a de novo review of the trial court’s grant of the dilatory exception of prematurity because the issue of whether a claim sounds in medical malpractice involves a question of law. Duplessis v. Tulane University, 07-0647, p. 3 (La.App. 4 Cir. 11/21/07), 972 So.2d 387, 389. The LMMA is special legislation in derogation of the general rights available to tort victims and therefore must be strictly construed. La-Coste, 07-0008, at p. 7, 966 So.2d at 524; Montalbano, 11-0753, at p. 3, 90 So.3d at 507. Louisiana courts are charged with interpreting the LMMA and determining whether the alleged delict sounds in general negligence or falls within the purview of the LMMA. LaCoste, 07-0008, at p. 12, 966 So.2d at 527; Montalbano, 11-0753, at p. 3, 90 So.3d at 507. If an ambiguity exists regarding whether or not the alleged tort sounds in medical malpractice, it is to be resolved in favor of the plaintiff. LaCoste, 07-0008, at p. 7, 966 So.2d at 524; Mineo v. Underwriters at Lloyds, London, 07-0514, p. 4 (La.App. 4 Cir. 10/22/08), 997 So.2d 187, 191. To be covered under the LMMA, the negligent act complained of must be related to medical treatment. Richard v. Louisiana Extended Care Centers, Inc., 02-0978, p. 13 (La.1/14/03), 835 So.2d 460, 468.
La. R.S. 40:1299.41 A(8) of the LMMA defines “malpractice” as follows:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions Isduring the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or sued on or in the person of a patient.
The LMMA further defines “tort” and “health care” as follows:
“Tort” means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily *242 employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
“Health care” means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
See La. R.S. 40:1299.41 A(7) and La. R.S. 40:1299.41 A(9), respectively.
Under the LMMA, “patient” is defined as follows:
“Patient” means a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied. [Emphasis supplied.]
See La. R.S. 40:1299.41 A(S). Pursuant to La. C.C. art. 25, a “[n]atural personality ... terminates at death.”
In deciding the matter before us, the Supreme Court’s decision in LaCoste, supra, and two other decisions rendered by this court, namely, Mineo, supra, and Montalbano, supra, are instructive. The plaintiffs in LaCoste brought suit alleging the wrongful death of a ventilator-dependent patient at Pendleton | nMethodist Hospital during the aftermath of Hurricane Katrina. According to the plaintiffs, the decedent’s death occurred as a result of the hospital’s failure to “design, construct, and/or maintain a facility so as to provide sufficient emergency power to sustain life support systems and/or to prevent flood-waters [sic] entering the structure, as well as the result of the failure of the hospital to implement an adequate evacuation plan, to have a facility available for the transfer of patients, and/or to have in place a plan to transfer patients in the event of a mandatory evacuation.” LaCoste, 07-0008, p. 1, 966 So.2d 519, 521. The hospital, a qualified health care provider under the LMMA, filed a dilatory exception of prematurity asserting that the plaintiffs’ claims sounded in medical malpractice, and thus, pursuant to the LMMA, required review by a medical review panel prior to litigating the matter in state court. Id., at p. 3, 966 So.2d at 522. The trial court disagreed and denied the exception. Following review, we reversed the trial court, in part, stating that a determination as to the adequacy of the hospital’s emergency electric-generating equipment, in addition to the decision as to whether or not to evacuate, fell within the purview of the LMMA. Id. at p. 4, 966 So.2d at 523 (LaCoste v. Pendleton Methodist Hosp., L.L.C., 06-1268, pp. 7-8 (La.App. 4 Cir. 12/6/06), 947 So.2d 150, 157).
The Louisiana Supreme Court granted writs for purposes of considering the plaintiffs’ claims, including whether the hospital’s failure to implement an adequate evacuation plan and its decision to “shelter in place” constituted medical malpractice as defined by the LMMA. Employing the six factors set forth in Coleman, 01-1517, pp. 17-18, 813 So.2d at 315-16, the Court analyzed the plaintiffs’ allegations of negligence to determine whether their claims sounded in | inmalpractice and, thus, were subject to initial review by a medical review panel. These factors consist of the following:
(1) Whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
*243 (3) Whether the pertinent act or omission involved assessment of the patient’s condition;
(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) Whether the injury would have occurred if the patient had not sought treatment; and
(6) Whether the tort alleged was intentional.
LaCoste, 07-0008, 07-0016, p. 8, 966 So.2d at 524-25. Applying the Coleman factors, the Court determined that the plaintiffs’ allegations of misconduct did not relate to medical treatment or the dereliction of professional medical skill, but rather, related to the deficient design of the hospital, lack of emergency power, failure to implement an evacuation plan, and failure to have a transfer facility for patients. Id. at pp. 9-10, 966 So.2d at 525-26. The Court specified that “reading the plaintiffs’ allegations in light of the strict application of the [LMMA] does not lead to the conclusion that they relate to medicine, medical care, or medical treatment.” Id. at p. 10, 966 So.2d at 526. According to the Court, the plaintiffs’ amended petition failed to allege that “the medical decision by any physician or nurse resulted in the failure to transfer [the] patient and that such failure resulted in her death.” Id. at p. 15, 966 So.2d at 528.
In Mineo, supra, a nursing home resident died at Chateau Living Center during the aftermath of Hurricane Katrina. The decedent’s children brought suit, | T1 alleging that the nursing home’s failure to provide adequate food, water, medicine, medical staff, and emergency power, in addition to its failure to evacuate the residents prior to the storm, constituted negligence. Chateau Living Center excepted to the petition on the grounds that the claims fell within the purview of the LMMA. The trial court granted its exception. On review, relying upon LaCoste, supra, we reversed, in part, finding that the plaintiffs’ claims that the nursing home failed to evacuate the residents and to provide adequate food and water sounded in general negligence and, thus, were not covered by the LMMA. See Mineo, 07-0514, at p. 9, 997 So.2d at 193-94.
In Montalbano, supra, the children of nursing home residents brought wrongful death actions against the nursing home following the residents’ deaths occurring in Hurricane Katrina. The children settled their claims with the nursing home but reserved their rights against the Louisiana Patient’s Compensation Fund (“LPCF”) alleging that the nursing home’s failure to evacuate the residents prior to the hurricane constituted medical malpractice and that the LPCF was liable for sums in excess of those received in settlement. The trial court granted the LPCF’s motion for summary judgment. On appeal, we affirmed, finding that the LMMA did not apply to the children’s claims on the following grounds: any failure by the nursing home to evacuate its facility prior to the hurricane was not related to medical treatment; a determination as to whether the nursing home failed to evacuate or have an adequate evacuation plan did not require expert medical evidence; the decision not to evacuate the residents did not involve an assessment of the respective residents’ conditions; and, the decision not to evacuate the residents did not occur within the context of a physician-patient relationship.
|12Now turning to the claims brought by Ms. Burandt in her original petition against HealthSouth, in the case sub judi-ce, upon applying the Coleman factors, we find that none of the claims made fall under the purview of the LMMA.
*244 (1) Failure to Plan, Supervise and Evacuate
By her first allegation of fault, Ms. Burandt contends that when faced with the circumstances created by the approaching hurricane, HealthSouth failed to provide appropriate planning and supervision in order to accommodate her mother, an acute care patient suffering from pneumonia and other health-related issues. From the record before us, we cannot determine whether HealthSouth’s alleged failure to plan and supervise Ms. Singel-mann was in any way related to her medical treatment or caused by a dereliction of professional skill, or instead, involved administrative deficiencies and a lack of emergency preparedness. Likewise, we are unable to ascertain from the record whether proof of HealthSouth’s alleged failure to plan and supervise will require expert medical testimony in order to determine whether the proper standard of care was breached and/or caused Ms. Sin-gelmann’s purported injuries and subsequent death, or rather, necessitate expert testimony related to emergency preparedness, disaster management, and/or administrative actions/services. The record is devoid of any evidence from which we can determine whether the alleged pertinent acts or omissions involved an assessment of the decedent’s medical condition or were, in fact, extraneous to Ms. Singel-mann’s medical care and more likely involved general administrative failures unrelated to patient-specific care. Similarly, we have no information to show whether HealthSouth’s alleged failure to plan and supervise so as to accommodate Ms. Sin-gelmann’s condition resulting in her injury and death occurred within the context of the physician-patient relationship or was | ^within the scope of the activities for which a hospital is licensed to perform. Further, we are unable to determine from the record whether Ms. Singelmann’s injuries and death would not have occurred had she not been under the care of Health-South. As we stated in Mineo, supra, “more evidence would be necessary to make such a determination.” See Mineo, 07-0514, at p. 7, 997 So.2d at 193.
Regarding whether HealthSouth’s alleged failure to plan and supervise was intentional, the record does not contain sufficient evidence for us to make this determination at this stage of the proceedings. Applying the Coleman factors, we find that HealthSouth has failed to show that Ms. Singelmann’s alleged injuries and subsequent death were related to medical treatment. In the absence of such a showing, and in keeping with the Supreme Court’s pronouncement in LaCoste that any ambiguity as to the scope of the claim against a health care provider should be resolved in favor of the plaintiff and against a finding that the tort sounds in malpractice, we find that Ms. Burandt’s claim that HealthSouth’s failure to provide appropriate planning and supervision to accommodate Ms. Singelmann as the hurricane approached which resulted in her injury and death does not fall under the provisions of the LMMA and that the trial court was incorrect in granting Health-South’s exception of prematurity as to this claim. See LaCoste, 07-0008, at p. 7, 966 So.2d at 524.
(2) Failure to Evacuate
We reach a similar result as to Ms. Burandt’s second allegation that Health-South’s failure to have an adequate evacuation plan resulted in injury and death to her mother. As the entire metropolitan city was under a mandatory evacuation order, HealthSouth’s failure to remove Ms. Singelmann was not treatment related. Everyone was asked to evacuate, not just the sick and the | ^elderly. See Mineo, 07-0514, at p. 9, 997 So.2d at 193. Clearly no *245 expert medical evidence is required to determine that people who did not evacuate for the hurricane would suffer adverse consequences, such as lack of food, water, injury and possibly death. Such consequences occurred in the hurricane affected area even among the general population, who were not seeking medical attention or treatment, or any who suffered any other prior health problems. Mineo, at p. 9, 997 So.2d at 194. Accordingly, we find that any liability resulting from HealthSouth’s failure to have an adequate evacuation plan for Ms. Singelmann falls outside the scope of the LMMA and is not subject to dismissal for prematurity based upon this record.
(3) Failure to Perform Nm-Medieal Duties
Ms. Burandt’s third allegation of negligence is that HealthSouth’s failure to perform the non-medical duties it owed to Ms. Singelmann resulted in her injury and subsequent death. HealthSouth has failed to meet its burden of establishing that this allegation of fault falls within the purview of the LMMA. On its face, the allegation deals with matters unrelated to medical treatment. From the record, no information exists suggesting that expert medical evidence will be needed to determine whether the standard of care was breached, that the pertinent act or omission involved an assessment of Ms. Singelmann’s medical condition, or that the failure to perform these non-medical duties resulting in injury and death occurred in the context of a physician-patient relationship. Insufficient information exists in the record to make a determination as to whether HealthSouth’s alleged failure to perform these non-medical duties it purportedly owed to Ms. Singelmann was intentional. We find that based on the record before us, HealthSouth has failed to carry its burden of proving that this allegation of fault falls within the |1fipurview of the LMMA. The trial court erred in granting HealthSouth’s exception of prematurity as to this claim.
(4) Abandonment
Ms. Burandt alleges that Health-South’s act of abandoning Ms. Singelmann while she was still under their control and supervision rises to the level of an intentional act because HealthSouth knew by their actions or failures to act that she was substantially certain to sustain injury and death. The record before us contains no evidence of an intentional tort on behalf of HealthSouth; all allegations sound in negligence. Based on the unprecedented nature of Hurricane Katrina, we are of the opinion that no human being could have envisioned or anticipated the catastrophic consequences and events that were to occur during its aftermath. Based on the record before us, we conclude that this allegation sounds in ordinary negligence that does not fall within the provisions of the LMMA and is not subject to dismissal for prematurity.[5]
CONCLUSION
Reading Ms. Burandt’s allegations in light of the strict application of the LMMA *246 does not lead to the conclusion that they relate to medicine, medical care, or medical treatment. LaCoste, 07-0008, at p. 10, 966 So.2d at 526. Having applied the Coleman factors to the facts alleged in Ms. Burandt’s original petition, we conclude that the claims as alleged do not fall within the provisions of the | ,fiLMMA. Accordingly, because the claims do not need to be submitted to a medical review panel, we find the trial court erred when it granted HealthSouth’s exception of prematurity. For these reasons, we reverse the judgment of the trial court and remand the matter for further proceedings.

REVERSED AND REMANDED.

. HealthSouth attached a copy of the services agreement existing between HealthSouth and Methodist Hospital as an exhibit to a reply memorandum it filed in support of its exception of prematurity. The services agreement was not introduced into evidence at the trial of HealthSouth’s exception nor attached to a pleading. See La. C.C.P. art. 852 and 853. Evidence that is not properly and officially offered and introduced cannot be considered on appeal, even if the evidence is physically placed in the record. See, e.g., Jackson v. United Services Auto. Ass'n Cas. Ins. Co., 08-333, p. 5 (La.App. 5 Cir. 10/28/08), 1 So.3d 512, 515. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. Id. Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence. La. C.C.P. art. 2164. Thus, even though the service agreement is physically contained in the record on appeal, we cannot consider it as it was never properly introduced into evidence.

. Ms. Burandt settled her claims with Methodist Hospital prior to the hearing on the exception of prematurity.

. On 29 August 2006, Ms. Burandt filed a "Petition to Establish Medical Review Panel” with the LPCF alleging Methodist Hospital and HealthSouth: (1) failed to provide appropriate medical care in the above described emergent circumstances; (2) failed to provide a medically appropriate evacuation plan for the decedent; and (3) failed to generally meet the standard of care required under the circumstances. On 13 September 2006, the LPCF notified counsel for Ms. Burandt of its belief that the allegations contained in the complaint do not fall within the scope of medical malpractice as defined by the LMMA.

. After the trial court granted HealthSouth’s exception of prematurity dismissing Ms. Bu-randt’s petition without prejudice, but prior to the entry of judgment, on 18 May 2012, Ms. Burandt filed another supplemental and amending petition asserting additional acts of negligence by HealthSouth in failing to have a facility available for transfer of patients, in failing to have in place a plan to transfer patients in the event of mandatory evacuation, and in failing to timely appoint a transportation entity or timely notify a transportation entity of the need to evacuate the decedent. As these allegations were filed subsequent to the trial court’s oral dismissal of Ms. Bu-randt’s claims without prejudice, we conclude that these new allegations are not properly before us on appeal. We distinguish our finding from the Supreme Court’s decision in Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451, pp. 2-3 (La.12/1/04), 888 So.2d 782, 784-85, where the Court allowed the plaintiff, pursuant to La. C.C.P. arts. 1151 and 1155, to file a supplemental and amending petition asserting new allegations one day prior to the hearing on the defendant’s exception of prematurity. The plaintiff's motion to file the supplemental and amending petition was granted by the trial judge with an order signed on the day of the hearing of the exception, thus placing the new allegations before the court for consideration in ruling upon the defendant’s exception of prematurity. In the instant case, Ms. Burandt did not file her amended and supplemental petition until one week after the hearing on the exception and the court’s rendering oral judgment on HealthSouth’s exception, and one day after a written judgment had been submitted for signature.

. While not in the original petition, in brief Ms. Burandt suggests an alternative theory of intentional tort against HealthSouth based upon abandonment. Specifically, at the heart of Ms. Burandt's allegation is that Health-South could not locate the whereabouts of her mother’s body for three months following the storm. A "patient” is defined under the LMMA, La. R.S. 40:1299.41 A(3), as a “natural person who receives or should have received health care” (emphasis supplied), and pursuant to La. C.C. art. 25, a "[n]atural personality ... terminates at death.” Therefore, by definition, this claim does not fall within the parameters of the LMMA, but sounds in general negligence.