| J.L., INDIVIDUALLY, AND TOGETHER WITH R.P., ON BEHALF OF THE MINOR CHILD, R.P. | * | NO. 2025-CA-0059 |
| | * | COURT OF APPEAL |
| VERSUS | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| CHARNELL HAYMOND, UNIVERSITY MEDICAL CENTER MANAGEMENT CORPORATION AND LOUISIANA CHILDREN'S MEDICAL CENTER DBA LCMC HEALTH | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-04957, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Brian L. McCullough
Peyton Patrick Murphy
MUPRHY LAW FIRM
2354 South Acadian Thruway
Baton Rouge, LA 70808

    COUNSEL FOR PLAINTIFF/APPELLANT

Ann Marie LeBlanc
Kathryn M. Caraway
Erica Andrews
CARAWAY LEBLANC, L.L.C.
3936 Bienville Street
New Orleans, LA 70119

    COUNSEL FOR DEFENDANT/APPELLEE

                              **EXCEPTION OF NO CAUSE
                                 OF ACTION DENIED;
                         REVERSED AND REMANDED
                                    JULY 22, 2025**

*TGC*
*SCJ*
*DNA*

Plaintiffs/Appellants seek review of the trial court's October 16, 2024 judgment granting the exception of prematurity filed by Defendants/Appellees, University Medical Center Management Corporation and Louisiana Children's Medical Center (hereinafter collectively "the Hospital"). On April 21, 2025, the Hospital filed a partial exception of no cause of action with this Court. After consideration of the record before this Court and the applicable law, we deny the Hospital's exception of no cause of action and reverse the trial court's judgment. This matter is remanded to the trial court for further proceedings consistent with this opinion.

<u>**Facts and Procedural History**</u>

On May 30, 2024, J.L. filed a petition for damages, individually and together with her partner R.P., on behalf of their minor child, R.P. (hereinafter collectively "Plaintiffs").[1] The petition names the following defendants: Charnell Haymond

---

[1] From this point forward, any reference to R.P. refers to the minor child that is the subject of the petition for damages. J.L. refers to the mother of the minor child. The Plaintiffs' initials will be used throughout this opinion as J.L. alleges she is a victim of a sexual offense and R.P. is a minor. *See* La. R.S. 46:1844(W) and Rule 5-1 and Rule 5-2, Uniform Rules, Courts of Appeal.

(hereinafter "Ms. Haymond"); University Medical Center Corporation (hereinafter "UMC"); and Louisiana Children's Medical Center d/b/a LCMC Health (hereinafter "LCMC").

The Plaintiffs maintain that Ms. Haymond was employed by UMC when she accessed J.L. and R.P.'s private and protected health information, on or around August 29, 2021. Plaintiffs alleged that Ms. Haymond then posted the protected information on social media, in violation of the Health Insurance Portability and Accountability Act (hereinafter "HIPAA") and LCMC's Notice of Privacy Practices. According to the Plaintiffs, Ms. Haymond continuously posted J.L. and R.P.'s medical information on social media and/or sent J.L. harassing text messages, causing her to experience both physical and mental injuries. Plaintiffs assert that UMC and LCMC are vicariously liable for Ms. Haymond's negligent and/or intentional acts of accessing protected information during the course and scope of her employment with UMC. Plaintiffs also maintain that UMC and LCMC are liable for negligently hiring, training and retaining Ms. Haymond.

The Hospital answered the petition by filing an exception of prematurity asserting that the allegations of the petition fall under the Louisiana Medical Malpractice Act (hereinafter "the LMMA").[2] Specifically, it asserts that Plaintiffs' allegations arise from healthcare related services and that it is a "qualified health care provider" as defined in the LMMA. In support of its exceptions, the Hospital attached an affidavit of Connie Madden (hereinafter "Ms. Madden"), the Director of Compliance at UMC; proof of Ms. Haymond's attendance at UMC's general orientation and educational seminars during her employment; and certification of

_____

[2] In addition to the exception of prematurity, the Hospital filed an exception of prescription.

the Hospital's enrollment in the Patient Compensation Fund pursuant to La. R.S. 40:1231.10, *et seq.*

Plaintiffs opposed the exception denying that their allegations against the Hospital and Ms. Haymond fall under the provisions of the LMMA. They further assert that the Hospital failed to meet its burden of proof that their allegations are related to medical treatment. After a hearing, the trial court granted the Hospital's exception of prematurity on October 16, 2024.[3] This appeal followed.

## Discussion

On appeal, Plaintiffs contend the trial court erred in granting the Hospital's exception of prematurity because the allegations are not related to medical treatment. However, prior to addressing the merits of Plaintiffs' appeal, we first consider the Hospital's exception of no cause of action on the issue of vicarious liability which was filed in this Court.

### *Exception of No Cause of Action*

In its exception of no cause of action, the Hospital asserts that the Plaintiffs' petition fails to state a cause of action for vicarious liability. Specifically, it contends that the petition fails to allege that Ms. Haymond was within the course and scope of her employment when she allegedly disclosed J.L. and R.P.'s protected health information on social media. We find this argument unpersuasive.

Pursuant to La. C.C.P. art. 2163(A), an appellate court may consider a peremptory exception filed for the first time on appeal if (1) proof of the exception appears in the record and (2) the exception was pleaded prior to the submission of

---

[3] The trial court's judgment also denied the exception of prescription filed by the Hospital. The Hospital sought supervisory review of the trial court's denial of its exception of prescription. The writ was denied by this Court on December 23, 2024. *J.L., individually and together with R.P., et al. v. Charnell Haymond, et al.*, 2024-0739, (La.App. 4 Cir. 12/23/24).

3

the case for decision. "The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition." *Aaron & Gianna, PLC v. Chambers*, 2024-0016, p. 3 (La.App. 4 Cir. 1/22/24), 381 So.3d 174, 176 (quoting *Scheffler v. Adams & Reese, LLP*, 2006-1774, p. 4 (La. 2/22/07), 950 So.2d 641, 646). A court considers the following when deciding on an exception of no cause of action: the petition for damages; amendments to the petition for damages; and any documents attached to the petition. *Id*. (citation omitted). "[I]t is not necessary for a plaintiff to plead the theory of [the] case in the petition." *831 Bartholomew Investments-A, L.L.C. v. Margulis*, 2008-0559, pp. 9-10 (La.App. 4 Cir. 9/29/09), 20 So.3d 532, 538 (citation omitted). Mere conclusions, unsupported by facts, do not constitute as a cause of action. *Id*., 2008-0559, p. 10, 20 So.3d at 538 (citation omitted). "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law." *Green v. Garcia-Victor,* 2017-0695, p. 5 (La.App. 4 Cir. 5/16/18), 248 So.3d 449, 453 (quoting *2400 Canal, LLC v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll*., 2012-0220, p. 7 (La.App. 4 Cir. 11/7/12), 105 So.3d 819, 825). We must consider that "[t]he burden of demonstrating that the petition states no cause of action is upon the mover." *831 Bartholomew Investments-A, L.L.C.,* 2008-0559, p. 10, 20 So.3d at 538.

The principle of vicarious liability is codified in La. C.C. art. 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." Thus, "[t]he threshold question is whether the employee's conduct was in the course and scope of his

employment." *J.C. on Behalf of N.C. v. St. Bernard Par. Sch. Bd.*, 2021-0111, p. 12 (La.App. 4 Cir. 2/4/22), 336 So.3d 92, 100. "[T]his Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the 'tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest.'" *Loya v. Lucas*, 2016-0321, p. 8 (La.App. 4 Cir. 9/21/16), 201 So.3d 928, 933-34 (quoting *Baumeister v. Plunkett*, 1995-2270, p. 3 (La. 5/21/96), 673 So.2d 994, 996) (citations omitted).

A review of the petition reveals that Ms. Haymond's acts occurred during the course and scope of her employment with UMC. The Plaintiffs' petition asserts that Ms. Haymond was employed by UMC in 2021 as a patient sitter. Moreover, Plaintiffs allege that Ms. Haymond used her UMC employee credentials to access J.L. and R.P.'s private and protected health information which she later posted on social media. The petition contains examples of social media posts and text messages, from Ms. Haymond to J.L., regarding the disclosure of private and protected health information. Further, the Plaintiffs' petition also maintains that UMC conceded that Ms. Haymond accessed J.L. and R.P.'s private health information from its database on August 29, 2021. After a thorough review of the petition, it is evident that the tortious conduct, i.e. Ms. Haymond's improper accessing of J.L and R.P.s' health information, occurred during the course and scope of her employment with UMC. Accepting the allegations of Plaintiffs' petition as true, we find sufficient facts were pled to support the imposition of

5

vicarious liability. Accordingly, the Hospital's exception of no cause of action is denied.

***Exception of Prematurity***

On appeal, Plaintiffs maintain the trial court erred in concluding that their allegations fall under the provisions of the LMMA. Conversely, the Hospital maintains that the Plaintiffs' claims are intertwined with their medical treatment and must therefore be presented to a medical review panel before proceeding in the trial court.

Whether a claim sounds in medical malpractice is a question of law that is reviewed *de novo*. *Davis v. Hillview Nursing Home, Inc.*, 2023-0523, p. 2 (La.App. 4 Cir. 9/25/23), 372 So.3d 849, 852 (citation omitted). An exception of prematurity questions whether a cause of action is ripe for judicial determination. *Kelleher v. Univ. Med. Ctr. Mgmt. Corp.*, 2021-00011, p. 3 (La. 10/10/21), 332 So.3d 654, 657 (citation omitted). "An action that is brought before the right to enforce it has accrued is deemed premature." *Burandt v. Pendleton Mem'l Methodist Hosp.*, 2013-0049, p. 6 (La.App. 4 Cir. 8/7/13), 123 So.3d 236, 240 (citation omitted). When the grounds for prematurity cannot be found on the face of the petition, evidence may be introduced to support or controvert the exception. La. C.C.P. art. 930.

"The exception [of prematurity] is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider." *Burandt*, 2013-0049, p. 6, 123 So.3d at 240-41 (citations omitted). The moving party bears the burden of proving prematurity and is required to show that it is entitled to a medical review panel because the

allegations fall within the scope of the LMMA. *Kelleher,* 2021-00011, pp. 3-4, 332 So.3d at 657 (citation omitted). "A medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel." *Id.,* 2021-00011, p. 3, 332 So.3d at 657 (citing La. R.S. 40:1231.8) (citation omitted). We recognize that "the LMMA is special legislation in derogation of the rights of tort victims, and its limitations on tort liability 'apply strictly to claims arising from medical malpractice.'" *Thomas v. Reg'l Health Sys. of Acadiana, LLC*, 2019-00507, p. 7 (La. 1/29/20), 347 So.3d 595, 600 (quoting *Billeaudeau v. Opelousas Gen. Hosp. Auth.,* 2016-0846, p. 10 (La. 10/19/16), 218 So.3d 513, 520 (citation omitted). "[A]ll other tort liability on the part of the qualified health care provider is governed by general tort law." *Burandt*, 2013-0049, p. 6, 123 So.3d at 241 (citations omitted). "If an ambiguity exists regarding whether or not the alleged tort sounds in medical malpractice, it is to be resolved in favor of the plaintiff." *Id.,* 2013-0049, p. 7, 123 So.3d at 241 (citations omitted). Thus, when appellate courts are interpreting the LMMA, it must determine whether the alleged acts sound in general negligence or medical malpractice. *Id.* (citations omitted). In order to fall under the provisions of the LMMA, the alleged act complained of must be related to medical treatment. *Id.* (citation omitted).

The LMMA defines "[m]alpractice" as:

[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of

7

> prosthetic devices implanted in or used on or in the person of a patient.

La. R.S. 40:1231.1(A)(13). Likewise, the term "[h]ealth care" is defined in the LMMA as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement... ." La. R.S. 40:1231.1(A)(9).[4] A "[t]ort" is defined as "any breach of duty or any negligent act

---

[4] In the 2025 legislative session, the definitional provisions of La. R.S. 40:1231.2 were amended, effective August 1, 2025. The term "health care" and "malpractice" were amended to provide:

> any act, treatment, administration, service, or care related to policies and procedures and the administration thereof, staffing, custodial services by licensed or certified staff, performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components. This includes all acts associated with the medical treatment of an individual, whether directly related to clinical care or performed in an administrative or managerial capacity necessary for the delivery of such care.
>
> ***
>
> means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including but not limited to failure to render services timely and the handling of a patient, loading and unloading of a patient, and all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the staffing, training, or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient. This includes all acts associated with the medical treatment of an individual, whether directly related to clinical care or performed in an administrative or managerial capacity necessary for the delivery of such care.

The Hospital maintains that Ms. Haymond's actions clearly fall under the amended definitions of "health care" and "malpractice." As a threshold matter, we note that the effective date of the amendments to La. R.S. 40:1231.1 is August 1, 2025. Moreover, La. C.C. art. 6 provides that in the absence of legislative expression, substantive laws apply prospectively, while procedural laws may apply prospectively and retroactively. "If the legislature does not express an intent regarding retroactive or prospective application of a statute, the court must determine whether the enactment is substantive or procedural." *Doe v. Jesuit High Sch. of New Orleans*, 2021-0284, p. 6, (La.App. 4 Cir. 11/10/21), 331 So.3d 426, 431 (citation omitted). Here, the legislature did not express an intent as to whether the amendments to La. R.S. 40:1231.1 apply retroactively or prospectively. While cognizant of the Hospital's arguments, we find that the amendments to La. R.S. 40:1231.1 are substantive in nature as it establishes new rules, rights and duties – or changes to existing ones – regarding the service and care related to administrative procedures and the staffing and licensing of certified staff. *See St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So.2d 809, 817 (La. 1992) (finding that substantive laws "establish new rules, rights, and duties or

or omission proximately causing injury or damage to another." La. R.S. 40:1231.1(A)(22).

Additionally, our Supreme Court has set forth the following six-part test to determine whether negligent acts fall under the provisions of the LMMA:

(1) Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,

(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,

(3) Whether the pertinent act or omission involved assessment of the patient's condition,

(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

(5) Whether the injury would have occurred if the patient had not sought treatment, and

(6) Whether the tort alleged was intentional.

*Billeaudeau,* 2016-0846, pp. 11-12, 218 So.3d at 521 (quoting *Coleman v. Deno,* 2001-1517, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315-16) (citations omitted).

In the matter *sub judice*, the Hospital bears the burden of proof, as the exceptor, in proving that the allegations of Plaintiffs' petition fall under the provisions of the LMMA. At the hearing, the Hospital submitted evidence in support of its exception of prematurity. *See* La. C.C.P. art. 930.[5] The Hospital's exception provides that Ms. Haymond's alleged actions fall under the provisions of

---

change existing ones."). We therefore find that the amendments to La. R.S. 40:1231.1 cannot be applied retroactively to the Plaintiffs' claims.

[5] The Hospital submitted the following in support of its exception: (1) the affidavit of Ms. Madden, the Director of Compliance at UMC; (2) proof of Ms. Haymond's attendance at UMC's general orientation and educational seminars during her employment; and (3) certification of the Hospital's enrollment in the Patient Compensation Fund pursuant to La. R.S. 40:1231.10, *et seq.*

the LMMA because they are related to medical treatment or a dereliction of professional skill. We disagree.

The allegations of Plaintiffs' petition and the evidence presented at the exception hearing establish that Ms. Haymond was employed by UMC as either a patient sitter or as a certified nursing assistant from 2017 to 2022. The Plaintiffs' petition states that Ms. Haymond improperly accessed J.L. and R.P.'s private and protected health information in 2021 and subsequently posted that information on social media. The petition also contends that Ms. Haymond intentionally accessed J.L. and R.P.'s protected health information and publicly shared their health conditions on social media to embarrass and/or harass the Plaintiffs. To support these assertions, the petition includes photos of texts messages from Ms. Haymond to J.L., in which Ms. Haymond is continuously harassing J.L. and her infant child regarding their health conditions. Also included in the petition are social media posts, from Ms. Haymond's personal accounts, discussing J.L and R.P.'s medical information on social media. Conversely, the Hospital submitted evidence in support of its exception including Ms. Madden's affidavit which concedes that Ms. Haymond accessed J.L. and R.P.'s health information on August 29, 2021 during her employment with UMC. The affidavit further provides that Ms. Haymond attended numerous training sessions from 2017 to 2022, at UMC and LCMC, wherein she was educated on the rules and procedures regarding the prohibition of accessing patient information unrelated to job duties. According to Ms. Madden's affidavit, Ms. Haymond accessed J.L. and R.P.'s private health information as a result of a "falling-out" between the parties.

Based upon the record before us, there is no evidence to suggest that the events which lead to Plaintiffs' allegations were related to medical treatment. Ms.

Haymond did not treat or perform any healthcare related services for Plaintiffs in her capacity as a patient sitter or a certified nursing assistant. Likewise, the Hospital did not render any form of medical treatment or treatment related services to J.L. or R.P. which required Ms. Haymond to access their private and protected health records. Ms. Haymond's actions will not require an expert medical opinion nor did her actions involve an assessment of J.L. and/or R.P.'s medical conditions. We also find that the evidence fails to show how the conduct occurred within the context of a physician-patient relationship or was within the scope of activities that Ms. Haymond was permitted to perform. Rather, the record demonstrates that Ms. Haymond accessed J.L. and R.P.'s protected and private health information in contravention of her employment duties. Ms. Haymond's actions were intentionally and maliciously done to bully and harass Plaintiffs. *See Davis*, 2023-0523, p. 5 (La.App. 4 Cir. 9/25/23), 372 So.3d at 853 (quoting *Montalbano v. Buffman, Inc.*, 2011-0753, p. 11 (La.App. 4 Cir. 3/21/12), 90 So.3d 503, 511) (finding that "allegations of [an] intentional tort would not be submitted to a medical review panel.").

Applying the *Coleman* factors, we find that the Hospital failed to show how Plaintiffs' allegations and injuries were related to medical treatment. For an action to be considered under the provisions of the LMMA the act must be related to medical treatment. *See LaCoste v. Pendleton Methodist Hosp. L.L.C.*, 2007-0008, p. 7 (La. 9/5/07), 966 So.2d 519, 524 and *Davis*, 2023-0523, p. 5, 372 So.3d at 853 (noting that the LMMA and its limitations on tort liability for qualified health care providers shall apply only to claims arising from medical malpractice and that all other tort liability is to be governed by general tort law). After a thorough review of the record, the Plaintiffs' allegations sound in general

11

negligence and/or tort rather than medical malpractice. We find the trial court erred in granting the Hospital's exception of prematurity. Accordingly, the trial court's judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

## Decree

Based on the foregoing, the Hospital's exception of no cause of action is denied. The trial court's October 16, 2024 judgment granting the exception of prematurity is reversed and this matter is remanded for further proceedings consistent with this opinion.

**EXCEPTION OF NO CAUSE
OF ACTION DENIED;
REVERSED AND REMANDED
JULY **, 2025**